STATE of Utah, Plaintiff and
Respondent,

v.

Mark Anthony COLLINS, Defendant
and Appellant.

No. 15901.

Supreme Court of Utah.

June 15, 1979.

Sheldon R. Carter, Provo, for defendant
and appellant.

Robert B. Hansen, Atty. Gen., Salt Lake
City, Earl F. Dorius, Asst. Atty. Gen., Noall
T. Wootton, Utah County Atty., Provo, for
plaintiff and respondent.

HALL, Justice:

This is an appeal from a conviction by a jury of the crime of forgery. The facts are not in dispute and the case only involves a matter of law.

One Moore falsely reported to his bank that his check book had been lost. Then he gave the check book, containing blank checks, to the defendant with directions to forge his name, cash the checks and they would split the goods, wares, merchandise and cash obtained thereby. This the defendant did for about three weeks until he was arrested and charged with the crime of forgery.

Ordinarily in proving the crime of forgery the state must show that the defendant not only used the name of another, but must also show that he did so without any authority so to do. In the case of *State v. Jones*[1] this Court said:

It is not forgery for one to write another's name with authority. 2 Bishop's Cr. Law 441, § 572. Eberhardt testified the signature was not in his handwriting, but he did not say that he had not authorized another to sign it for him. Nor is his testimony such that it can be fairly inferred therefrom that such authority was not given.

Our statute[2] has been amended so that it now reads so far as material thus:

(1) *A person is guilty of forgery if, with purpose to defraud anyone, or with knowledge that he is facilitating a fraud to be perpetrated by anyone, he*:

(a) Alters any writing of another without his authority or utters any such altered writing; or

(b) *Makes,* completes, executes, authenticates, issues, transfers, publishes, or utters *any writing so that the writing* or the making, completion, execution, authentication, issuance, transference, publication or utterance *purports to be the act of another,* whether the person is existent or nonexistent, or purports to have been executed at a time or place or

1. 81 Utah 503, 20 P.2d 614 (1933). See also: *State v. Fitzgerald,* 186 Or. 301, 205 P.2d 549 (1949); *People v. Lundin,* 117 Cal. 124, 48 P. 1024 (1897); *State v. Swan,* 60 Kan. 461, 56 P. 750 (1899).

2. U.C.A., 1953, 76–6–501.

in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed. [Emphasis added.]

The statute now provides that if one alters any writing of another he must do so without authority before forgery is made out. It also provides for forgery if he makes any writing which purports to be the act of another if it is done with a purpose to defraud anyone. The uncontested facts of this case show that the defendant did make a writing which purported to be the act of Moore and at the time he did so he (and Moore) had the intent to defraud others. The defendant was charged with forgery and convicted under the provisions of subsection (b) of the statute set out above.

His guilt was established by the admitted facts and the judgment should be, and it is hereby affirmed.

CROCKETT, C. J., and STEWART, J., concur.

MAUGHAN, Justice (dissenting).

For the following reasons, I dissent. Defendant was convicted by a jury of the crime of forgery, Sec. 76–6–501, U.C.A. 1953, as enacted 1973.

The gravamen of the matter at hand concerns the burden of proof. Here, the signature on a negotiable instrument purports to be that of a real person, and not that of a fictitious person. The specific issue is: With subdivision (1)(b) of 76–6–501 in mind, must the state prove, beyond a reasonable doubt, the person, whose name appears on the instrument, did not authorize it to be appended there.

We should reverse. All statutory references are to U.C.A. 1953.

The information charged that defendant, with a purpose to defraud, uttered a bank check in the amount of $7.00 purporting to bear the signature of Patrick E. Moore, when defendant knew at the time the check was forged.

The record indicates Moore gave his check book to defendant and instructed defendant to write his name on the checks, and they would split the proceeds evenly. Defendant in company with Moore and two others went to the Circle K Food Store and purchased $7.00 worth of gasoline. Defendant went into the store and wrote a check for the amount of the purchase. He presented some type of temporary driver's license as identification. The sales clerk testified she could not read the license so she did not accept it as identification. She recorded the license plate on the motor vehicle.

An agent of the drawee, bank, testified the check was not paid, because there were not sufficient funds in Moore's account. The bank wrote on the check "Refer to Maker." The check was returned to Circle K.

At the conclusion of the state's case, defendant moved for a dismissal on the ground the state had not presented any evidence to prove the signature of Moore was unauthorized, viz., that the signature was forged. Defendant cites *State v. Jones*[1] to support his contention. The state successfully urged before the trial court that prior case law was no longer applicable under the new criminal code, and it was no longer part of the state's burden to prove the signature was unauthorized under Sec. 76–6–501(1)(b). On appeal defendant contends the trial court erred in its interpretation of the statute.

The relevant portions of Sec. 76–6–501, provide:

(1) A person is guilty of forgery if, with purpose to defraud anyone, or with knowledge that he is facilitating a fraud to be perpetrated by anyone, he:

(a) Alters any writing of another without his authority or utters any such altered writing; or

(b) Makes, . . . or utters any writing so that the writing . . . or utterance purports to the act of another, whether the person is existent or nonexistent, . . .

The state urges that the exclusion of the phrase "without his authority" in subdivision (b), when such phrase is specifically

expressed in subdivision (a) indicates a legislative intent to delete the issue of authorization when a person is charged with the crime of forgery under subdivision (b).

Such a simplistic argument does not resolve the issue. The operative words as well as the concepts of Sec. 76–6–501(1) are comparable to the former forgery statute, Sec. 76–26–1, U.C.A. 1953. Significantly, under the former statute, there was no expression involving authorization. The relevant portions of Sec. 76–26–1, provided:

Every person who, with intent to defraud another, falsely makes, alters, forges . . . check . . . or utters . . . as true or genuine any of the above-named false, altered, forged or counterfeited matters . . . knowing the same to be false, altered, or forged or counterfeited, with intent to prejudice, damage or defraud any person; . . . is guilty of forgery.[2]

In *State v. Jones*[3] this Court reversed the conviction for forgery on the ground there was no evidence the check was not authorized by the person whose signature appeared thereon. This Court stated:

. . . Before defendant could be convicted it was necessary for the state to prove beyond a reasonable doubt that the check he passed was a forged instrument. In cases where the signature purports to be that of a real person, and not of a fictitious party, falsity may be shown by evidence that the person whose name is signed did not make or authorize the signature. [Citations omitted.]

To establish falsity it must be made to appear not only that the person whose name is signed to the instrument did not sign it but also that his name was signed without authority. [Citations omitted.] In *People v. Whiteman*, [114 Cal. 338, 46 P. 99, 101] the court said:

"To prove that an accused person signed the name of another to an instrument, and that he passed such instrument as genuine, does not prove the commission of a crime. It must be shown that it was a false instrument, and this is not proven until it is shown that the person who signed another's name did so without authority. Until the proof is made, it is not shown to be a false instrument, and the defendant is not put to his proof at all."[4]

The Court further observed it was not forgery for one to write another's name with authority.

In *State v. Gorham*,[5] this Court said it was committed to the doctrine that to establish falsity it must be shown not only that the person whose name is signed to the instrument in question did not sign it, but also that his name was signed without authority.

In *State v. Jensen*[6] this Court set forth the following as the elements constituting the offense of uttering a forged instrument: (1) a false, altered, forged or counterfeit instrument; (2) the passing, uttering, or publishing of such instrument; (3) knowledge on the part of the passer that the instrument is forged, altered, false or counterfeit; (4) the instrument must be passed as genuine and true; (5) it must be passed with the intent to prejudice or defraud someone.

A review of the new statutory provisions concerning forgery in Sec. 76–6–501 indicates the foregoing elements are yet applicable. The phraseology in subdivision (1)(b) "so that the writing . . . or utterance purports to be the act of another, . . ." incorporates elements number one and number four; i. e., the false writing is passed as genuine and true. Thus, to establish the falsity of the check in this case, it was necessary for the state to prove not only that Patrick E. Moore did not sign the check but also that his name was signed without his authority. In fact, the state conceded that Moore authorized defendant to sign his name but claimed such autho-

---

2. 76–6–501(1) combines § 76–26–1 and 76–26–7, the latter dealt specifically with fictitious instruments.

3. Note 1, supra.

4. At p. 509 of 81 Utah, p. 617 of 20 P.2d.

5. 87 Utah 86, 90, 48 P.2d 447 (1935).

6. 103 Utah 478, 487, 136 P.2d 949 (1943).

rization was a nullity because it was granted for an illegal purpose.

After the prosecution had averted a motion to dismiss by convincing the trial court the issue of authority was no longer required under the new statute, the case was submitted to the jury incorporating this issue. In Instruction No. 8, the elements of the crime were set forth, included therein, was the following:

That the signature appearing on said bank check was forged, and the same was written without authority of the said Patrick E. Moore.

Instruction No. 9, provided:

The law does not recognize as valid any authority given by the owner of a bank checking account to another person to use such account or sign the owner's name to a check drawn thereon if the purpose of such authorization is to defraud another person. In this case if you have a reasonable doubt as to whether the authorization given was to facilitate a fraud on others, you must acquit the defendant. If, however, you are convinced beyond a reasonable doubt that the authority to sign was given the defendant by Mr. Moore and that the purpose of such authorization was to facilitate a fraud on others, you will find that the state has met its burden of proving that the defendant did not have authority to make the check in question, Exhibit No. 1.

Defendant took an exception to this instruction and to the court's refusal to give defendant's requested instruction which stated that if the jury found the signature on the writing purporting to be the act of Patrick Moore, was authorized by Moore, the jury must find defendant not guilty of the felony offense of forgery.

On appeal, defendant contends the trial court erred in giving Instruction No. 9. This contention is correct. The state's analysis of the nature of the authorization is incorrect. The authorization involved under the forgery statute focuses on the au-

thority to write *signature* not to commit or to facilitate a fraud with a genuine instrument. The "intent to defraud" required by a forgery statute is a purpose to use a false writing as if it were genuine in order to gain some advantage, generally at someone else's expense.[7] As previously noted, an instrument is not proved false until it is shown the person who signed another's name did so without authority.

The evidence adduced in this case indicated Patrick Moore was the owner of the bank account upon which the check was drawn, and Moore authorized defendant to sign his signature to the check. The check was not paid because Moore had insufficient funds in his account. If Moore and defendant conspired to commit a crime, the crime was not forgery but issuing a bad check in violation of Sec. 76–6–505. Forgery cannot be committed by the genuine making of an instrument for the purpose of defrauding.[8] Wherever authority is given to sign the name of another to a writing, there can be no forgery.[9] The check was a genuine instrument and was not a false writing. Section 70A–3–403(1), provides:

A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

Patrick Moore, by his authorization of defendant to sign Moore's signature, became bound and he could not have maintained an action against the drawee bank if it had paid the check.

*State v. Liberty National Bank And Trust Company of Oklahoma City,*[10] is a case which illustrates the points involved in this appeal. The State of Oklahoma filed an action alleging that the defendant, bank, had paid certain state warrants bearing a forged endorsement of the payee's signature. These were transmitted to the state for payment with an express guarantee that prior endorsements were genuine. The

7. *State v. May,* 93 Idaho 343, 461 P.2d 126, 128 (1969).

8. 36 Am.Jur.2d, Forgery, § 6, p. 684.

9. Id., § 9, p. 685.

10. Okl., 414 P.2d 281 (1966).

state paid these warrants relying on the bank's guarantee; and that the state was entitled to recover upon the bank's guarantee of the genuineness of the payee's signature.

The facts indicated that one Max Genet, Jr., the Director of the Department of Commerce and Industry of the State of Oklahoma entered into a scheme or agreement with one Dan Savage, who would file claims against the department for professional services not performed by him. These claims were approved by Genet and transmitted by him to the Budget Department for payment. State warrants were prepared and issued to pay the face amount to the order of Dan Savage, as payee. The warrants were delivered to Genet to be distributed to the payee. The state argued that the bank was liable because the name of Dan Savage had been "forged" on the warrants by Genet.

The court acknowledged at the outset that if the signature of the payee were a forgery, the bank would be liable upon its express guarantee of prior endorsements.

The court observed that the fact there was no indication on the warrants that the payee's name was signed by an agent does not affect the validity of the signature if the agent, in fact, possessed authority to sign for the payee. The court further said it was difficult to understand how the state could argue Genet did not possess the authority to sign the warrants, after expressly alleging he and Savage were partners in a conspiracy to defraud the state. In this joint undertaking, each acted as the agent for the other, and Genet, in signing the name of Savage to the warrants, did so with the express authorization and consent of his coconspirator.

The state urged that even if Genet were authorized to endorse the payee's name to the warrants, nevertheless, such an endorsement was a forgery. In response, the court said the crime of forgery requires the false making of a document. The authorized endorsement of the payee's name to the state warrants was not a forgery, for the authorized signing of another's name does not constitute a false making. The court stated that its opinion conformed to the fundamental rule that when an agent, acting within the scope of his authority, affixes the name of his principal to a writing; it is, in law, equivalent to an actual signing by the principal.

The court held that the payee's signature was affixed to the state warrants with the consent and approval of the payee and such an authorized signing did not constitute a forged endorsement of the payee's signature.

In the instant case, the prosecution conceded Patrick Moore authorized defendant to sign Moore's signature to the check. The genuine making of an instrument for the purpose of defrauding does not constitute the crime of forgery.[11] The trial court erred in denying defendant's motion to dismiss. Defendant's conviction should be reversed, and the case should be remanded to the district court with an instruction to discharge defendant, for the state's failure to establish an essential element of the corpus delicti of the crime of forgery, viz., the lack of authority.[12]

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.

---

11. 2 Wharton's Criminal Law And Procedure— Anderson, § 634, p. 413.

12. *Mathews v. Lamb,* 84 Nev. 649, 446 P.2d 651 (1968).