[Crim. No. 1283.   Third Appellate District.—November 7, 1933.]

THE PEOPLE, Respondent, v. HECTOR MAIOLI, Appellant.

Herbert E. Paul for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Against defendant an information was filed charging forgery. He was tried and convicted and now appeals from the judgment and the order denying the motion for a new trial.

Defendant issued a check signed "Maioli Bros", payable to Hector Maioli and indorsed by Hector Maioli. This check was drawn on the Commercial Bank of Patterson and at that time there was an account therein in the name of Maioli Bros. Defendant presented this check to a merchant and received in return merchandise and the balance in cash.

It is urged by appellant upon this appeal that where the offense is forgery of the name of an existing person the People must affirmatively establish first, the signing and passing of the check; secondly, the intent to defraud; thirdly, the lack of authority, and fourthly, knowledge of such lack of

authority. It is to the proof of lack of authority appellant principally directs his attack upon the judgment.

An official of the bank to which the check was directed testified there was an account in the bank in the name of Maioli Bros., and that the signature of either of two certain parties was sufficient to authorize withdrawal of funds therefrom. The name of defendant was, of course, not one of those so authorized.

To a representative of the sheriff's office, defendant made a statement admitting he had written the check in question and signed Maioli Bros. thereto and that he presented the same to the complaining witness and received cash and merchandise therefor. Nothing was asked him by what authority or upon whose order he signed and issued the check in question.

The defendant took the stand in his own behalf and again admitted the issuing of the check. He also admitted having issued other checks signed Maioli Bros., upon which he received cash, all of which were returned by the bank as irregular and all of which were made good by members of defendant's family. Again no question was asked as to any authority to sign Maioli Bros. to the check. It might be inferred from the testimony of defendant that he did not have authority to sign Maioli Bros., but we cannot sustain a conviction upon suspicion or conjecture. Practically the entire cross-examination of the district attorney was devoted to the consideration of previous checks issued by defendant and whether or not at the time they were issued defendant knew them to be forgeries. We find no reference to the check here in question except the following:

"Q. What did they (the family) say? A. Well, the first checks I wrote, they told me that if I would stay home and work, they would make them good, so I stayed home and worked and they made them good. Q. Stayed home and worked it out? A. Yes, sir. Q. Do you mean to sit there and tell this jury that you didn't know that the checks that you gave to McAulay (complaining witness) to Spenker and to Merchan were not good? What is your answer? A. No. Q. Do you mean that you didn't know that they were not good? A. Oh, yes, I knew. Q. You knew that they were not good, didn't you? A. Yes. Q. And you knew when you passed them and got the money that these people that

got the checks were going to be out ten dollars or collect it from somebody, didn't you? A. No, sir, I knew my folks were going to make it good. Q. You knew your folks were going to make it good? A. Yes, sir.''

Neither of the Maioli Bros. were called as witnesses to testify as to any authority or lack of authority in defendant.

■ We believe the People's case is fatally defective in that it fails to show the defendant had no authority to issue the checks at the time of their utterance.

''To prove that an accused person signed the name of another to an instrument, and that he passed such instrument as genuine, does not prove the commission of a crime. It must still be shown that it was a *false instrument,* and this is not proven until it is shown that the person who signed another's name did so *without authority.* Until this proof is made it is not shown to be a false instrument, and the defendant is not put to his proof at all.'' (*People* v. *Whiteman,* 114 Cal. 338 [46 Pac. 99].)

In the case of *People* v. *Lundin,* 117 Cal. 124 [48 Pac. 1024], the defendant was accused of the forging of a check by signing the name of another thereto. The prosecution called two witnesses named John F. Johnson, the name affixed to the check. The first knew nothing of the defendant and the second testified that he had known the defendant some seven or eight years and that he did not sign the check and that the signature was not his handwriting and that he had no account at the bank upon which it was drawn. Commenting upon the testimony, the court said: ''No question was asked and no testimony introduced attempting to show whether or not defendant was authorized to sign the name of 'John F. Johnson' to the check. Under the previous ruling of this court we are compelled to hold the evidence was insufficient to warrant a conviction.''

In the recent case of *People* v. *Hidalgo,* 128 Cal. App. 703 [18 Pac. (2d) 391], it was held that where two persons are authorized to sign their names under the name of a corporate drawer the prosecution must show that neither of such persons had signed the check, nor that they had authorized their names to be signed by defendant.

''The most that appeared was that Baker Ice Machine Company had a banking account with Seaboard National Bank, and that as far only as the bank was concerned, it

208

would honor checks drawn against said account which were signed by certain designated individuals. Neither by the minutes nor by the records of Baker Ice Machine Company was it shown that no other person or persons was or were respectively authorized by the corporation to draw checks on the said banking account." (*People* v. *Hidalgo, supra.*)

Therefore it seems to be clear that to show lack of authority to sign a check, testimony of the person who had the power to give such authority is essential, and that the testimony of an official of the bank as to the limitations on the bank's authority to honor checks is not an adequate substitute. We must, therefore, hold that there is no evidence of lack of authority in the defendant to sign the name of Maioli Bros. to the check.

Defendant alleges error in the giving of certain instructions, but in view of our conclusion we do not believe that it is necessary to comment upon that objection.

The judgment and the order are reversed.

Thompson, J., and Plummer, J., concurred.