[Crim. No. 3618.   Second Dist., Div. Three.   Feb. 4, 1943.]

THE PEOPLE, Respondent, v. RAYMOND WADE, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

BISHOP, J. pro tem.—■ Suspicion points strongly to defendant's guilt, but the evidence is insufficient to establish it. This case has many parallels with that of *People* v. *Hidalgo,* which was first reversed ((1933) 128 Cal.App. 703 [18 P.2d 391]) because of the insufficiency of the evidence, but later affirmed ((1933) 134 Cal.App. 293 [25 P.2d 270]) when the insufficiencies had been cured. In the Hidalgo case the defendant was charged with six counts of forgery and found guilty on each count; in our case the number of counts is four. Blank checks had been stolen from the Baker Ice Machine Company, a foreign corporation, and Hidalgo admitted having had the checks in his possession. Blank checks, in our case, had been stolen from the book of Dealers Wholesale Company, whether a one-man business, a partnership, or a corporation is not revealed, and until he presented four of them for goods and cash, the defendant is not shown to have had any of the stolen checks. It was proved, however, that he had access to the office where the checks were kept locked up, although it does not appear whether the office was occupied or unoccupied at the times the defendant might have been in it.

In the Hidalgo case the checks bore the names of "L. Baker" and "H. Spencer," below that of the Baker Ice Machine Co., as those who had signed the checks. There was, it appears, a Mr. "J. L. Baker" whose signature, followed by the word "President" was one of several signatures "authorized" at the bank, where the company had an account. The company's general manager, Mr. McKenzie, could authorize other signatures. The office manager of the company's branch office testified that the signature "L. Baker"

on the checks was not that of J. L. Baker, and that he did not know either L. Baker or H. Spencer. In the case under review the checks bear the name "Raymond Shirm" over the words "General Manager" where the signature of the person executing the checks was meant to be. A Mr. Raymond J. Schirm was a witness at the trial and in answer to the question "What is your business or occupation?" replied "I am manager of the Dealers Wholesale Company, in North Hollywood." What his position with the company was on November 15, 1941, just five months earlier, the date of the checks and the date they were passed by the defendant, the jury was not told, but from his testimony the jury could infer that he was in a position of some authority. As already suggested, the jury was not informed whether the North Hollywood establishment was a branch store of the Dealers Wholesale Company or what relation Raymond J. Schirm, or whoever was the "manager," bore to the "general manager" or to the governing board or head of the company. There was no evidence of any sort, even from the bank for whatever value it might be, as to who had authority to execute the company's checks. The name appended to the four checks in question was not the signature of Raymond J. Schirm, the evidence shows, but there is not a word of testimony that in November, 1941, or at any other time, there was not a Raymond Shirm who did have authority to execute the company's checks or to authorize someone to sign his name to them.

Neither in the Hidalgo case nor in this was there any evidence that the defendant had executed the checks; if they were forged it was by some other's hand. In our case we have an "expert" witness, stipulated to be so, who gave it as his opinion that the signatures on the face of the checks and the endorsements on the back, including the addresses given, were written by different people and that none of them was written by the defendant. The jury was quite within its rights in disregarding this expert, for one of the witnesses who identified the defendant as the passer of one of the checks testified that he endorsed it in his presence. A comparison of the handwriting of this identified endorsement, and of the others as well, with the signatures on the faces of the checks would not warrant the jury in concluding that he who endorsed the checks also executed them.

In the Hidalgo case the payee was unknown to the office manager who testified. The evidence is a bit stronger on this phase of our case; Raymond J. Schirm not only did not know the payee, but added, "We never did have anybody by that name work," and he answered affirmatively the question "so far as you are concerned, that person, as having any money coming to you from your concern, is a wholly fictitious person?" But the witness had not drawn the checks, and the People failed to show that as far as others in the concern were concerned there was no reason to draw these checks payable to P. J. Kloch.

In this case, then, as in the Hidalgo case, the evidence was insufficient to prove that the checks were forged, let alone to prove that the defendant had forged them, and the evidence was insufficient to establish that the payee was not a real person or that he had not authorized the defendant to endorse and cash them. Because of these defects the Hidalgo judgment was reversed with a statement of principles and a citation of authorities which we will not repeat. The Supreme Court denied a petition to take over the case and neither do we have cause to doubt that it was correctly decided.

The judgments of conviction, and the order denying the defendant a new trial, are therefore reversed.

Desmond, P. J., and Wood (Parker), J., concurred.